Robert SANDERSON, Plaintiff–Appellant,

v.

The PEOPLE of the State of Colorado, Defendant–Appellee.

No. 99CA0203.

Colorado Court of Appeals, Div. V.

June 8, 2000.

Certiorari Denied Oct. 23, 2000.

Richard M. Borchers, P.C., Richard M. Borchers, Westminster, Colorado, for Plaintiff–Appellant.

Ken Salazar, Attorney General, Michael E. McLachlan, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROTHENBERG.

Plaintiff, Robert Sanderson, appeals the judgment dismissing his claim for declaratory relief against defendant, the People of the State of Colorado. The sole issue on appeal is whether § 18–3–104(1)(b), C.R.S.1999, which criminalizes assisted suicide, violates Sanderson's rights under the Free Exercise Clause of the First Amendment to the United States Constitution. Because we conclude it does not, we affirm.

Sanderson is over eighty years old, and wishes to provide his wife with a durable medical power of attorney authorizing her to end his life by euthanasia, provided that two physicians agree his medical condition is hopeless. He filed this action seeking a declaratory judgment that neither his wife, nor the physician administering euthanasia, would be subject to criminal liability for homicide under § 18–3–104(1)(b). The statute provides that: "A person commits the crime of manslaughter if: Such person intentionally causes or aids another person to commit suicide."

Sanderson asserted claims under the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution. The trial court dismissed the action for failure to state a claim upon which relief could be granted, and on appeal, Sanderson raises only his First Amendment claim. He has not pressed his claims under other portions of the United States Constitution, or raised any issues under the Colorado Constitution.

Sanderson contends the trial court erred in dismissing his complaint for failure to state a claim. He maintains that Colorado's assisted suicide law interferes with his religious beliefs, and therefore violates his rights under the Free Exercise Clause of the First Amendment to the United States Constitution. We are not persuaded.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Burke v. Greene,* 963 P.2d 1119 (Colo.App.1998).

In reviewing a motion to dismiss, we must accept as true all allegations of material fact contained in the complaint, and view such allegations in the light most favorable to the plaintiff. *Burke v. Greene, supra.* Review of a motion to dismiss is *de novo. Fluid Technology, Inc. v. CVJ Axles, Inc.,* 964 P.2d 614 (Colo.App.1998).

■ Statutes are presumed to be constitutional, and the burden of establishing unconstitutionality is on the party challenging the statute's validity. *People v. Bielecki,* 964 P.2d 598 (Colo.App.1998).

In his complaint, Sanderson described his personal religious beliefs as follows:

[Sanderson] believes that God or nature endowed human kind with a "free will" and that [Sanderson's] "free will" is the predominant and driving force in his life, as well as in human life generally, within the confines of man's physical and mental limitations and within the limitations of [the] earthly environment.

[Sanderson] believes that God, or nature, intended that the free will of man be exercised in all circumstances according to his own best judgment with due consideration for others.

Such belief includes man's right to delegate power to another person to authorize euthanasia, or to directly authorize euthanasia by an attending Physician when [Sanderson] predetermines the reasonable medical conditions under which it is to be exercised.

[Sanderson] does not believe in the sanctity of human life as such, therefore he is not bound by any particular religious or church doctrine which opposes euthanasia under any circumstances, including a situation which is atrocious and intolerable to him.

There have been other constitutional challenges to laws that criminalize assisted suicide, all of which have been unsuccessful. *See Vacco v. Quill,* 521 U.S. 793, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997)(concluding there is no right to assisted suicide under the Equal Protection Clause); *Washington v. Glucksberg,* 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)(concluding there is no right to assisted suicide under the Due Process Clause). However, we are unaware of any published opinion that has addressed a First Amendment freedom of religion challenge to an assisted suicide statute, nor have counsel referred us to such authority.

■ The Free Exercise Clause of the First Amendment provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend I. The First Amendment is binding on the states through incorporation into the Fourteenth Amendment. *See Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

■ Under the Free Exercise Clause, religious belief and the profession of that belief are absolutely protected, and religious practices also are protected to a lesser extent. However, neutral laws of general applicability that have an incidental effect on religious practices do not offend the Free Exercise Clause. *See Employment Division, Department of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In other words, an individual's religious beliefs do not excuse the individual from "compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Employment Division, Department of Human Resources v. Smith, supra,* 494 U.S. at 878–79, 110 S.Ct. at 1600, 108 L.Ed.2d at 885.

In *Smith,* two Native Americans were denied unemployment benefits after they were fired for ingesting peyote during a religious ceremony. It was undisputed that their religious beliefs were sincere, that they only ingested peyote for sacramental purposes, and that the use of peyote was "vital to [their] ability to practice their religion." *Employment Division, Department of Human Resources v. Smith, supra* 494 U.S. at 903, 110 S.Ct. at 1613, 108 L.Ed.2d at 902 (O'Connor, J., concurring in the judgment).

The Court held that the Free Exercise Clause did not exempt the *Smith* plaintiffs from an Oregon law criminalizing their consumption of peyote. In its analysis, the Court refused to apply the compelling state

interest test, *see Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), emphasizing that the test was inapplicable to "across-the-board" criminal prohibitions on a particular form of conduct. *Employment Division, Department of Human Resources v. Smith, supra*, 494 U.S. at 884–85, 110 S.Ct. at 1603, 108 L.Ed.2d at 889–90 ("The government's ability to enforce generally applicable prohibitions of socially harmful conduct ... cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development.").

The Court in *Smith* also distinguished its earlier cases barring the application of a neutral, generally applicable law to religious conduct, observing that the previous cases had "involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and of the press...." *Employment Division, Department of Human Resources v. Smith*, 494 U.S. at 881, 110 S.Ct. at 1601, 108 L.Ed.2d at 887. That distinction has been criticized. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 567, 113 S.Ct. 2217, 2245, 124 L.Ed.2d 472, 512 (1993)(Souter, J., concurring in part and concurring in the judgment, criticizing the "hybrid" distinction made in *Smith* as "ultimately untenable," and as creating an exception "so vast as to swallow the *Smith* rule").

However, here, as in *Smith*, the sole issue presented by Sanderson in this appeal is his Free Exercise claim, unsupported by any other alleged constitutional violation.

■ Sanderson's claim is less compelling than that presented in *Smith* because he does not just seek a limited exemption from the assisted suicide statute for himself so that he may freely practice his religion without fear of criminal prosecution. He also seeks exemptions for third parties –his wife and his physician—based on his personal religious beliefs, which may or may not be shared by the others. Even assuming that Sanderson had standing to raise such claims on behalf of third persons, an issue not raised by the parties on appeal, we have found no precedent for such a broad application of the Free Exercise Clause in First Amendment jurisprudence.

■ In summary, we conclude § 18–3–104(1)(b) is a valid, religiously-neutral, and generally-applicable criminal statute that prohibits conduct a state is free to regulate. *Employment Division, Department of Human Resources v. Smith, supra*. Thus, while we do not question the sincerity of Sanderson's religious beliefs, we agree with the trial court that there was no evidence Sanderson could have proffered regarding the importance of assisted suicide to his belief system which would exempt him, or his designated third persons, on First Amendment grounds from the provisions of the statute.

Because Sanderson could not as a matter of law provide any facts to support his claim for relief under the First Amendment, we conclude the trial court did not err in dismissing the claim under C.R.C.P. 12(b)(5).

Judgment affirmed.

Judge KAPELKE and Judge CASEBOLT concur.